## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAIETTA CONSTRUCTION, INC.,<br>MAIETTA ENTERPRISES, INC., and<br>M7 Land Co., LLC<br><br>Defendants. | Civil Action No. 2:21-cv-00131-JDL |

## CONSENT DECREE

WHEREAS, the Plaintiff, the United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), filed the Complaint in this action against Maietta Enterprises, Inc., Maietta Construction, Inc., and M7 Land Co., LLC ("Defendants"), alleging that Defendants, individually or together, violated Sections 301, 309, and 404 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311, 1319, and 1344, by discharging dredged or fill material and/or controlling and directing the discharge of dredged or fill material into "waters of the United States" without a permit or other authorization from the United States Department of the Army Corps of Engineers ("Corps");

WHEREAS the Complaint alleges that these discharges occurred at the property owned at the time by Maietta Enterprises, Inc., located at 150 Pleasant Hill Road, Scarborough, Maine (herein referred to as the "Site"), and which is more fully depicted in Attachment 1 hereto;

WHEREAS, the Complaint seeks: (1) to enjoin the discharge of pollutants into waters of the United States in violation of CWA section 301(a), 33 U.S.C. § 1311(a); (2) to require

Defendants, at their own expense and at the direction of EPA, to restore and/or mitigate the damages caused by its unlawful activities; and (3) to require Defendants to pay civil penalties to the United States as provided in Section 309(d) of the CWA, 33 U.S.C. § 1319(d);

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of the United States' civil claims under the CWA against the Defendants set forth in the Complaint;

WHEREAS, the United States and Defendants agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the United States' claims against Defendants in the Complaint; and

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the United States' claims against Defendants in the Complaint, and that this Consent Decree adequately protects the public interest in accordance with the CWA and all other applicable federal law.

THEREFORE, without further adjudication of any issue of fact or law, and upon consent of the parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I.    **JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over the claims in the Complaint, and personal jurisdiction over Defendants pursuant to CWA sections 309(b) and (d) and 404(s), 33 U.S.C. §§ 1319(b) and (d) and 1344(s), and 28 U.S.C. §§ 1331, 1345, and 1355.

2.      Venue is proper in the District of Maine pursuant to CWA sections 309(b) and 404(s), 33 U.S.C. §§ 1319(b) and 1344(s), and 28 U.S.C. § 1391(b) and (c), because Defendants

conduct business in this District, the subject property is located in this District, and the cause of action alleged herein arose in this District.

3.     For purposes of this Consent Decree, including any action to enforce this Decree, the Parties agree, and the Court finds, that the Complaint states claims upon which relief can be granted pursuant to CWA sections 301, 309 and 404, 33 U.S.C. §§ 1311, 1319 and 1344, and the Court has subject matter jurisdiction over the claims in the Complaint.

## II.     APPLICABILITY

4.     The obligations of this Consent Decree shall apply to and be binding upon Defendants, their officers, directors, agents, employees, servants, successors and assigns, and any person, firm, association or corporation who is, or will be, acting in concert or participation with the Defendants, whether or not such person(s) has notice of this Consent Decree. In any action to enforce this Consent Decree against Defendants, Defendants shall not raise as a defense the failure of any of its officers, directors, agents, employees, successors or assigns or any person, firm or corporation acting in concert or participation with Defendants, to take any actions necessary to comply with the provisions hereof.

5.     Any transfer of ownership or other interest in Maietta Construction, Inc., Maietta Enterprises, Inc., or M7 Land Co., LLC, or in any portion of the Site identified in Attachment 1 hereto or otherwise associated with this Consent Decree shall not alter or relieve Defendants of their obligations to comply with all of the terms of this Consent Decree. At least thirty (30) days prior to the transfer of ownership or other interest in the Site, or any portion thereof subject to this Consent Decree, the party making such transfer shall provide written notice and a true copy of this Consent Decree to the proposed successors in interest and shall simultaneously notify EPA and the United States Department of Justice at the addresses specified in Section XII below

that such notice has been given.  As a condition to any such transfer, the party making the transfer shall reserve all rights, including the right of access to the Site, necessary to comply with the terms of this Consent Decree.  Each deed, title, sale agreement or other instrument conveying an interest in any portion of the Site or in Maietta Construction, Inc., Maietta Enterprises, Inc., or M7 Land Co., LLC, shall contain a notice stating that such real property or interest in Maietta Construction, Inc., Maietta Enterprises, Inc., or M7 Land Co., LLC is subject to this Consent Decree, and shall reference the Office of the Cumberland County Registry of Deeds Book and Page Number at which the Consent Decree is recorded, as well as the reference to any restrictions applicable to the property under a Conservation Easement required by this Consent Decree.

### III.   DEFINITIONS

6.   The following terms are defined herein as follows:

A.   "Attachment 1," "Attachment 2,"  Attachment 3," "Attachment 4" and "Attachment 5" shall mean the Attachments attached to this Consent Decree, which are fully incorporated herein.  Attachments 1, 2, 3, 4 and 5 are integral and fully enforceable and binding parts of this Consent Decree, and are specifically included in the term "Consent Decree" when used herein.

B.   "Consent Decree" shall mean this document, Attachments 1, 2 3, 4 and 5 to this document, and any attachments to Attachments 1, 2, 3, 4 and 5.

C.   "Defendants" shall mean Maietta Construction, Inc., Maietta Enterprises, Inc., and M7 Land Co., LLC.

D.   "Effective Date" shall mean the date on which a fully executed version of this Consent Decree is signed by the Court and entered on the Court docket in this case.

       E.     "Payment Guarantee" shall mean the amount of funds or property held in the Trust established pursuant to Paragraph 23 herein, which is established to ensure full performance of all of Defendants' obligations under this Consent Decree.

       F.     "Site" shall mean the real property depicted as the site in Attachment 1.

### IV.    SCOPE OF CONSENT DECREE

7.     This Consent Decree shall constitute a complete and final settlement of all civil claims for injunctive relief and civil penalties alleged in the Complaint against Defendants under sections 301, 319, and 404 of CWA concerning the Site. Defendants agree that the termination or modification of this Consent Decree shall only occur under the terms herein or with the written agreement of the United States.

8.     It is the express purpose of the parties in entering into this Consent Decree to further the objectives set forth in CWA section 101, 33 U.S.C. § 1251. All plans, studies, construction, remedial maintenance, monitoring programs, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Defendants to achieve and maintain full compliance with, and to further the purposes of, the CWA.

9.     Except as in accordance with this Consent Decree, Defendants and Defendants' agents, successors and assigns, are enjoined from discharging any pollutant into waters of the United States at the Site, unless such discharge complies with the provisions of the CWA and its implementing regulations.

10.    This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law. Nothing in this Consent Decree shall limit the ability

of the United States or any agency or instrumentality thereof to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c), for any alleged violations not addressed by this Consent Decree. Any discharge of dredged and/or fill necessary for work required by this Consent Decree shall be consistent with the requirements set forth in Attachment 2.

11.     This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with any applicable federal, state, or local law, regulation, or permit.

12.     This Consent Decree in no way affects the rights of the United States as against any person as defined in the Clean Water Act other than Defendants, Maietta Construction, Inc., Maietta Enterprises, Inc., and M7 Land Co., LLC. The United States specifically reserves all rights and claims against any person other than the afore-mentioned Defendants.

13.     The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law.

14.     Except as provided in Paragraphs 1, 2, and 3 of this Consent Decree, nothing in this Consent Decree shall constitute an admission of fact or law by any party.

15.     Each Defendant shall be jointly and severally responsible for fulfilling the obligations of this Consent Decree assigned to Defendants. Any obligation in this Consent Decree assigned to Defendants and completed by either Maietta Construction, Inc., Maietta Enterprises, Inc., or M7 Land Co., LLC shall constitute satisfaction of said obligation for all Defendants.

## V.    CIVIL PENALTIES

16.     Defendants shall pay a civil penalty of twenty-five thousand dollars and no cents ($25,000.00), as specified in Paragraph 17 below.

17.     Defendants shall make all payments that are due and owing under the terms of this Consent Decree, by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing the U.S.A.O. file number to be supplied by the United States, EPA Region 1, and the DOJ case number 90-5-1-1-20450.   Payment shall be made in accordance with instructions provided to Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Maine.  The payment set forth in Paragraph 16 above shall be made no later than 30 days after the Effective Date of this Consent Decree ("Payment Deadline").  Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.  Should payment of the full amount set forth in Paragraph 16 not be made by the Payment Deadline, it shall be deemed a material breach of this Consent Decree for which stipulated penalties and/or other relief set forth in this Consent Decree shall become immediately applicable.

18.     Upon payment of any penalties required by this Consent Decree, Defendants shall provide written notice, at the addresses specified in Section XII of this Consent Decree, that such payment was made in accordance with Paragraph 17 of this Consent Decree.

19.     Penalty payments pursuant to this Consent Decree (including the payments described in Paragraphs 16 and 17 as well as any stipulated penalties provided for under Section XI), are penalties within the meaning of Section 162(f)(1) of the Internal Revenue Code, 26 U.S.C. § 162(f)(1), and 26 C.F.R. § 1.162-21(a)(3)(i), and Defendants shall not deduct any of the

aforementioned penalties or other penalties paid under this Decree in calculating its federal income tax.

## VI.    RESTORATION, MITIGATION AND PRESERVATION

20.    Defendants immediately shall cease and refrain from any discharges of dredged or fill material into "waters of the United States" at the Site, unless they are specifically authorized by a valid permit issued under Section 404 of the Clean Water Act or otherwise expressly authorized by this Consent Decree.

21.    Defendants shall perform the wetland restoration, mitigation, and other measures in Attachment 2 under the terms and conditions stated in Attachment 2, including performing work in accordance with all deadlines, criteria, and other requirements set forth in Attachment 2. The parties acknowledge and agree that the objective of such restoration and other projects required under Attachment 2 is to restore and replace the lost ecological functions and services of the alleged filled and disturbed wetlands described in the Complaint. Upon completion of the terms and conditions of Attachment 2, Defendants shall not mow, cut, clear, cultivate, dredge, excavate, farm, fill, dewater, drain, or otherwise disturb in any manner whatsoever any location identified in Attachment 2, except as approved in advance by EPA.

22.    As partial compensatory mitigation, Defendants also shall comply with all terms and conditions of Attachment 2, including but not limited to all terms pertaining to the execution and recording of the enforceable Conservation Easement identified in Attachment 2, in accordance with the schedule set forth in therein.

23.    **Trust Agreement**:

A.    As a condition of this Consent Decree, Defendants have established the U.S. v. Maietta Construction et al. Trust ("Trust"), which is attached hereto as Attachment 3 and

is an integral part of this Consent Decree.  Defendants have appointed Timothy Norton as

Trustee ("Trustee"), who has been approved by the United States and will serve as Trustee unless

and until a successor Trustee is appointed pursuant to Section 12 of Attachment 3.  The purpose

of the Trust is to set forth the Payment Guarantee which is established to provide financial

assurance by Defendants that the actions required to be performed by the Defendants under this

Consent Decree are fully performed in a timely manner.

B.      The Trustee shall be empowered under the Trust to cause to be carried out

all of the requirements described in Paragraphs 16, 17 and 21 herein and in the Scope of Work,

attached to this Consent Decree as Attachment 2 ("Work"), in the event Defendants fail to carry

out said Work in accordance with Attachment 2 and the schedules set forth therein or fail to

make the payment in accordance with Paragraphs 16 and 17, and after the United States

exercises the Payment Guarantee established in the Trust Agreement.  The Trustee shall cause

said Work to be carried out at the direction of EPA, as detailed in the Trust.

C.      In order to ensure the availability of funds necessary to perform the Work

required by this Consent Decree in the event Defendants fail to perform the Work themselves as

specified, or in the event Defendants fail to make the payment under the terms of Paragraphs 16

and 17 herein, Defendants have established and shall maintain the Payment Guarantee, by

granting or causing to be granted to the Trust a mortgage on certain real property (the

"Mortgaged Property") owned by Vincent A. Maietta, Trustee of The Pleasant Hill Trust I a/k/a

The Pleasant Hill Trust u/d/t dated November 7, 1994 (the "Pleasant Hill Trust"), an affiliated

entity of Defendants, and more particularly described in the approved form of mortgage attached

hereto as Attachment 4 (the "EPA Mortgage").  The EPA Mortgage shall secure the performance

of the Defendants' obligations under the Consent Decree.  The Trust shall hold a mortgage in the

amount of $950,000.00 (plus interest and costs, together with any advances required to protect the Mortgaged Property) on the Mortgaged Property while the Pleasant Hill Trust shall continue to hold title. The title to the Mortgaged Property shall not prevent the Trustee from foreclosing on the EPA Mortgage, selling the Mortgaged Property, and using the proceeds of such sale(s) for the purpose of carrying out the Work under the terms of the Trust and this Consent Decree.

D.     Upon the failure of the Defendants to perform the Work in accordance with this Consent Decree or to satisfy the payment requirement in accordance with Paragraphs 16 and 17, the United States will give written notice to the Defendants prior to exercising its right to exercise the Payment Guarantee established in the Trust Agreement for the breach of Defendants' obligations under the Consent Decree. The notice shall specify: (a) the breach; (b) the action required to cure the default; (c) a date, not less than 60 days from the date the notice is given to the Defendants, by which such default must be cured; and (d) that failure to cure the default on or before the date specified in the notice shall result in the EPA Mortgage being foreclosed, the Mortgaged Property being sold, and the proceeds used to perform the Work, in accordance with the terms of the Trust Agreement. Failure of the United States to give notice as set forth in this paragraph within any specific time period following a breach or default shall not nullify or otherwise affect the United States' right to exercise its rights to exercise the Payment Guarantee. Notwithstanding EPA's exercise of its right to exercise the Payment Guarantee, Defendants shall remain liable for full performance of the Work and for satisfying all other obligations under this Consent Decree.

E.     Reference is made to that certain Mortgage Deed, Security Agreement & Financing Statement and Collateral Assignment of Leases and Rentals respecting the Mortgaged Property and certain other real property owned by the Pleasant Hill Trust given by the Pleasant

Hill Trust to Saco & Biddeford Savings Institution ("SBSI") dated May 3, 2019, and recorded in the Cumberland County Registry of Deeds in Book 35628, Page 188, and in Book 35628, Page 210 (the "SBSI Mortgage and SBSI Collateral Assignment").  Reference is further made to that certain Subordination Agreement (Attachment 5) by and between the Pleasant Hill Trust and SBSI and recorded on near or even date herewith pursuant to which SBSI subordinated all indebtedness now or hereafter secured by the SBSI Mortgage and SBSI Collateral Assignment to the Defendants' obligations under the EPA Mortgage up to a maximum amount of $950,000.00, plus interest and costs, together with any advances required to protect the Mortgaged Property. The declaration by SBSI of an event of default under the SBSI Mortgage and SBSI Collateral Assignment shall not automatically constitute an event of default under the Consent Decree or the EPA Mortgage.  Upon the occurrence of any event of default under the SBSI Mortgage and SBSI Collateral Assignment, the EPA shall have the right to do any of the following in its sole discretion:  (i) declare an event of default under the Consent Decree, in which event the EPA shall have all rights and remedies available to it for default of the Consent Decree, including, without limitation, the right to foreclose the EPA Mortgage under any legal method of foreclosure in existence at the time or now existing, or under any other applicable law, including, without limitation, the STATUTORY POWER OF SALE pursuant to 33 M.R.S.A. §501-A; or (ii) take no action.  Election by the EPA not to declare a default under the Consent Decree, or the EPA Mortgage, as to any one event of default, shall not constitute a waiver of any rights of the EPA as to any subsequent event of default.  Upon the occurrence of any event of default under the SBSI Mortgage and SBSI Collateral Assignment, if SBSI shall elect to foreclose the SBSI Mortgage and SBSI Collateral Assignment, the first $950,000.00 of the cash proceeds of the sale of the Mortgaged Property (plus interest and costs, together with any advances required to

protect the Mortgaged Property) shall be paid to the Fund (as that term is defined in the Trust Agreement) to secure the Defendants' obligations under the Consent Decree.

F.     All property, monies, and other collateral received by the Trustee pursuant to the Payment Guarantee shall be used to pay for the Work in accordance with this Consent Decree, to pay penalties or other monies due and owing under this Consent Decree that were not paid by the deadlines set forth herein, and to pay the reasonable costs and fees of the Trustee in foreclosing on the EPA Mortgage, liquidating property and administering the Trust. After full completion of all Work and requirements established herein and payment of all costs for such Work and administration of the Trust and any other monies due and owing under this Consent Decree, any funds or property remaining in the Trust shall be transferred to Defendants and/or their designated affiliate by the Trustee and the Trust shall be dissolved in accordance with the terms of the Trust.

G.     If Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 23.C. above, Defendants may petition EPA for a reduction in the amount of the Payment Guarantee provided that the amount of the Payment Guarantee is equal to or exceeds the estimated cost of the remaining Work to be performed. Defendants shall submit a written proposal for such reduction to the United States, which shall specify, at a minimum, the estimated cost of the remaining Work to be performed and the basis upon which such cost was calculated. If, after receiving such a proposal from Defendants, the United States determines that (1) the estimated cost of the remaining Work is less than the Payment Guarantee and (2) the amount of the proposed reduction is appropriate, the United States shall reduce the Payment Guarantee consistent with Defendants' request. Upon notice from the United States that the United States has agreed to reduce the amount of the

Payment Guarantee, the Trustee shall release the mortgage amount that the United States approved for removal from the Trust. The Trustee shall send the United States written confirmation of the transaction releasing any portion of the mortgage out of the Trust.

H.      If Defendants desire to change the nature of the funds or property that comprise the Payment Guarantee provided pursuant to this Section, Defendants may during the course of the Work, submit a written request to the United States for a change in the collateral or funds comprising the Payment Guarantee. The United States will respond in writing to any such request by Defendants by either accepting or rejecting the proposed revised payment guarantee. If the proposed revision of the Payment Guarantee is accepted by the United States, the Consent Decree shall be modified in accordance with Section XVI below.

I.      Defendants shall not release, cancel or discontinue any Payment Guarantee established in this Consent Decree except as provided in this Section. Within 60 days after the date Defendants submit their Final Monitoring Report in accordance with Attachment 2 of this Consent Decree, if the United States agrees that the Work and monitoring have been completed in accordance with Attachment 2 and the approved Workplan, the United States will provide the Defendants and the Trustee written notice of Defendants' completion of the Work. Upon receipt of the notice of completion, Defendants may thereafter release, cancel, or discontinue the Payment Guarantee provided pursuant to this Section and the Trustee shall release any mortgage remaining in the Trust pursuant to this Section. In the event of a dispute, Defendants may release, cancel, or discontinue the Payment Guarantee required hereunder only in accordance with a decision rendered under Section IX (Dispute Resolution) of this Consent Decree.

24.     To ensure that all parcels of land identified in Attachment 2 are preserved and remain undisturbed, Defendants shall, within fifteen (15) days after entry of this Consent Decree, record a certified copy of this Consent Decree with the Registry of Deeds, Cumberland County, Maine.  Thereafter, each deed, title, or other instrument conveying an interest in the Site or any portion of the Site shall contain a notice stating that the property is subject to this Consent Decree and shall reference the Office of the Cumberland County Registry of Deeds Book and Page Number at which the Consent Decree is recorded, as well as the reference to any restrictions applicable to the property under a Restrictive Covenant or Easement required by this Consent Decree.

25.     To the extent any obligation set forth in this Consent Decree requires Defendants to obtain a federal, state, local or other governmental permit or approval, Defendants shall take all actions necessary to obtain such permits and approvals in a manner that will comply with any applicable deadline set forth in this Consent Decree.  Defendants may seek relief under the provisions of Section X of this Consent Decree (Force Majeure) for a delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, provided that Defendants have submitted timely and complete applications, and have taken all other actions necessary to obtain all such permits or approvals, and provided the requirements of Paragraphs 37-40 are met.

26.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2)(iii)(A), performance of the requirements set forth in Attachment 2 is restitution, remediation, and/or actions to come into compliance with the requirements of the Clean Water Act and regulations promulgated thereunder.

## VII.   NOTICES AND OTHER SUBMISSIONS

27.     Defendants shall provide EPA and the United States Department of Justice with written reports at the addresses specified in Section XII below, in accordance with the requirements of and schedule in Attachment 2 and the approved Work Plan.

28.     In all notices, documents or reports submitted to the United States pursuant to this Consent Decree, Defendants shall, by signature of a senior management official, certify such notices, documents and reports as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature by any Defendant shall satisfy this requirement on behalf of and bind all Defendants.

## VIII.   RETENTION OF RECORDS AND RIGHT OF ENTRY

29.     Until ten years after the Effective Date or until six months after this Consent Decree is terminated, whichever is later, Defendants shall preserve and retain all records and documents now in their possession or control or which come into their possession or control that relate in any manner to the performance of the tasks conducted under this Consent Decree, regardless of any corporate retention policy to the contrary.  Defendants shall, for the same time period, also instruct their contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the tasks done pursuant to this Consent Decree.

30.     At the conclusion of the document retention period, Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Defendants shall deliver any such records or documents to EPA. Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Defendants assert such a privilege, they shall provide the United States with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants. No documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

31.     Until termination of this Consent Decree, the United States and its authorized representatives and contractors shall have authority at all reasonable times to enter the Defendants' premises or any property identified in this Consent Decree to:

> A.     Monitor the activities required by this Consent Decree;
>
> B.     Verify any data or information submitted to the United States or otherwise relevant to this Consent Decree;
>
> C.     Obtain samples;
>
> D.     Inspect and evaluate Defendants' restoration and/or mitigation activities or any other activities required by this Consent Decree;
>
> E.     Obtain or generate documentary evidence, including photographs or other data, that may be relevant to any aspect of this Consent Decree; and
>
> F.     Inspect and review any records required to be kept under the terms and conditions of this Consent Decree and the CWA.

32.     The provisions of Paragraph 31 are in addition to, and in no way limit or otherwise affect, the statutory authorities of the United States to conduct inspections, to require monitoring, and to obtain information from the Defendants as authorized by law.

## IX.     DISPUTE RESOLUTION

33.     Any dispute that arises with respect to the meaning or requirements of this Consent Decree, including but not limited to exercising the Payment Guarantee pursuant to Paragraph 23.D of this Consent Decree and Section 6 of the Trust Agreement, shall be, in the first instance, the subject of informal negotiations between the United States and Defendants affected by the dispute to attempt to resolve such dispute. The period for informal negotiations shall not extend beyond thirty (30) days beginning with written notice by one party to the other affected party or parties that a dispute exists, unless agreed to in writing by those parties. If a dispute between the United States and Defendants cannot be resolved by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fourteen (14) days after the end of the informal negotiations period, Defendants file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. Unless the parties otherwise agree or the Court otherwise orders, the United States shall have thirty (30) days to respond to the motion and propose an alternate resolution. In resolving any such dispute, Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree and the CWA, and that Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

34.     If the United States believes that a dispute is not a good faith dispute, or that a delay would pose or increase a threat of harm to the public or the environment, it may move the Court for a resolution of the dispute prior to the expiration of the thirty (30) day period for informal negotiations.   Defendants shall have fourteen (14) days to respond to the motion and propose an alternate resolution.  In resolving any such dispute, Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree, and that Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

35.     The filing of a motion asking the Court to resolve a dispute shall not extend or postpone any obligation of Defendants under this Consent Decree, except as provided in Paragraph 43 below regarding payment of stipulated penalties.

## X.     FORCE MAJEURE

36.     Defendants shall perform the actions required under this Consent Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by events which constitute a Force Majeure event.  A Force Majeure event is defined as any event arising from causes beyond the control of Defendants, including its employees, agents, consultants and contractors, which could not be overcome by due diligence and which delays or prevents the performance of an action required by this Consent Decree within the specified time period.  A Force Majeure event does not include, inter alia, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, changed circumstances arising out of the sale, lease or other transfer or conveyance of title or ownership or possession of a site, or failure to obtain federal, state or local permits,

unless, as described in Paragraph 25, Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits and approvals.

37.     If Defendants believe that a Force Majeure event has affected Defendants' ability to perform any action required under this Consent Decree, Defendants shall notify the United States in writing within seven (7) calendar days after the event at the addresses listed in Section XII. Such notice shall include a description of the following:

A.     What action has been affected;

B.     The specific cause(s) of the delay;

C.     The length or estimated duration of the delay; and

D.     Any measures taken or planned by Defendants to prevent or minimize the delay and a schedule for the implementation of such measures.

Defendants may also provide to the United States any additional information that they deem appropriate to support a conclusion that a Force Majeure event has affected the ability to perform an action required under this Consent Decree. Failure to provide timely and complete notification to the United States shall constitute a waiver of any claim of Force Majeure as to the event in question.

38.     If the United States determines that the conditions constitute a Force Majeure event, then the deadline for the affected action shall be extended by the amount of time of the delay caused by the Force Majeure event. Defendants shall coordinate with EPA to determine when to begin or resume the operations that had been affected by any Force Majeure event.

39.     If the parties are unable to agree whether the conditions constitute a Force Majeure event, or whether the length of time for fulfilling the provision of the Consent Decree at

issue should be extended, any party may seek a resolution of the dispute under the procedures in Section IX of this Consent Decree.

40.     Defendants shall bear the burden of proving: (1) that the noncompliance at issue was caused by circumstances entirely beyond the control of Defendants and any entity controlled by Defendants, including their contractors and consultants; (2) that Defendants or any entity controlled by Defendants could not have foreseen and prevented such noncompliance; and (3) the number of days of noncompliance that were caused by such circumstances.

## XI.   STIPULATED PENALTIES

41.     After the Effective Date, if Defendants fail to timely fulfill any requirement or obligation of the Consent Decree, including but not limited to any of the requirements, tasks or obligations set forth in Attachment 2 under the deadlines set forth therein and/or any requirements, tasks or obligations set forth in any work plan(s) or task list called for in Attachment 2, or the requirements of the Trust Agreement set forth in Attachment 3, such failure shall be deemed a material breach of this Consent Decree and Defendants shall pay a stipulated penalty to the United States for each violation of each requirement of this Consent Decree as follows:

|  |  |  |
|---|---|---|
| A. | For Day 1 up to and including Day 30 of non-compliance | $1,000.00 per day |
| B. | For Day 31 up to and including 60 of non-compliance | $2,000.00 per day |
| C. | For Day 61 and beyond of non-compliance | $3,000.00 per day |

Such payments shall be made without demand by the United States on or before the last day of the month following the month in which the stipulated penalty accrued. Notwithstanding the foregoing, the Parties may mutually agree to amend any deadline set forth in Attachment 2 or the Workplan to be developed pursuant to Attachment 2, in which case stipulated penalties shall not accrue as described in this Paragraph unless Defendants fail to meet the amended deadline. The method of payment shall be in accordance with the terms of Paragraph 46 herein.

42.     Any disputes concerning the amount of stipulated penalties, or the underlying violation that gives rise to the stipulated penalties, that cannot be resolved by the parties pursuant to the Dispute Resolution provisions in Section IX and/or the Force Majeure provisions in Section X, shall be resolved upon motion to this Court as provided in Paragraphs 33-35.

43.     The filing of a motion requesting that the Court resolve a dispute shall stay Defendants' obligation to pay any stipulated penalties with respect to the disputed matter pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall continue to accrue from the first day of any failure or refusal to comply with any term or condition of this Consent Decree. In the event that Defendants do not prevail on the disputed issue, stipulated penalties shall be paid by Defendants as provided in this Section XI.

44.     To the extent Defendants demonstrate to the Court that a delay or other non-compliance was due to a Force Majeure event (as defined in Paragraph 36 above) or otherwise prevail on the disputed issue, the Court shall excuse the stipulated penalties for that delay or non-compliance.

45.     In the event that a stipulated penalty payment is applicable and not made on time, interest will be charged and accrue in accordance with the statutory judgment interest rate

provided for in 28 U.S.C. § 1961. The interest shall be computed daily from the date the payment is due until the date the payment is made. The interest shall also be compounded annually.

46.     Defendants shall make any payment of a stipulated penalty by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing the U.S.A.O. file number to be supplied by the United States, EPA Region 1, and the DOJ case number 90-5-1-1-20450. Payment shall be made in accordance with instructions provided to the Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Maine. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day. Further, upon payment of any stipulated penalties, Defendants shall provide written notice, at the addresses specified in Section XII of this Decree.

## XII.   ADDRESSES

47.     All notices and communications required under this Consent Decree shall be made to the parties through each of the following persons and addresses:

A.     TO EPA:

    (1)     ANDREA SIMPSON
          Senior Enforcement Counsel
          United States Environmental Protection Agency
          Region 1
          Mail Code: ORC4-2
          5 Post Office Square
          Boston, MA 02109-3912

    (2)     RAYMOND PUTNAM
          Wetlands Enforcement Section
          United States Environmental Protection Agency

Region 1
Mail Code:  ECAD4-1
5 Post Office Square
Boston,  MA 02109-3912


**B.**     TO THE UNITED STATES DEPARTMENT OF JUSTICE

PERRY ROSEN
United States Department of Justice
Environment  & Natural Resources Div.
Environmental  Defense Section
P.O. Box 7611
Washington,  D.C.  20044
DJ # 90-5-1-1-20450


**C.**     TO DEFENDANTS:

(1)     Maietta Enterprises, Inc.
Maietta Construction,  Inc.
M7 Land Co., LLC
154 Pleasant Hill Road
Scarborough,  Maine

(2)     Katherine Joyce, Counsel to Defendants
Bernstein,  Shur, Sawyer & Nelson, P.A.
100 Middle  Street
P.O. Box 9729
Portland, ME 04104-5029


## XIII.   COSTS OF SUIT

48.     Each party to this Consent Decree shall bear its own costs and attorneys' fees in
this action.  Should  Defendants subsequently be determined by the Court to have violated the
terms or conditions  of this Consent Decree, Defendants shall be liable  for any costs or attorneys'
fees incurred by the United States in any action against Defendants for noncompliance  with or
enforcement of this Consent Decree.

### XIV.  PUBLIC COMMENT

49.     The parties acknowledge that after the lodging  and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and comment.  The United States reserves the right to withhold  or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts which lead the United States to conclude that the proposed judgment  is inappropriate,  improper,  or inadequate.  Defendants agree not to withdraw from, oppose entry of, or to challenge any provision  of this Consent Decree, unless the United States has notified  the Defendants in writing  that it no longer supports entry of the Consent Decree.

### XV.     CONTINUING JURISDICTION OF THE COURT

50.     This Court shall retain jurisdiction  over this action in order to enforce or modify the Consent Decree consistent with applicable  law or to resolve all disputes arising hereunder as may be necessary or appropriate  for construction  or implementation  of this Consent Decree. During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the Consent Decree.

### XVI.   MODIFICATION

51.     Upon approval and entry of this Consent Decree by the Court and delivery  to the United States of the fully-executed  Trust Agreement, this Consent Decree shall constitute the final judgment  of the Court as to all claims set forth in the Complaint.   Any substantive modification  of this Consent Decree shall be in writing, and shall not take effect unless signed by both the United States and Defendants and approved by the Court.

## XVII.  **TERMINATION**

52.     Except for the obligations set forth in Paragraphs 29-30, which shall survive the termination of this Consent Decree, this Consent Decree may be terminated by either of the following:

A.     Defendants and the United States may at any time make a joint motion to the Court for termination of this Decree or any portion of it; or

B.     Defendants may make a unilateral motion to the Court to terminate this Decree only after each and all of the following has occurred:

1.     Defendants have obtained and maintained compliance at the Site with all provisions and requirements of this Consent Decree and the CWA for twelve (12) consecutive months;

2.     Defendants have paid all penalties and other monetary obligations hereunder and no penalties or other monetary obligations are outstanding or owed to the United States;

3.     Defendants have certified compliance pursuant to subparagraphs B.1. and B.2., above, to the Court and all Parties; and

4.     Within forty-five (45) days after receiving such certification from the Defendants, the United States has not contested in writing that such compliance has been achieved.  If the United States disputes Defendants' full compliance, this Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.

## XVIII.   SIGNATURES

53.     Each undersigned representative of Defendants, the United States, and EPA, by so signing, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party he or she represents in this document.

54.     This Consent Decree may be signed in counterparts and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX.   INTEGRATION

55.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among and between the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein, other than deliverables that are subsequently submitted and approved pursuant to this Decree. The Parties acknowledge that there are no representations or understanding relating to the settlement other than those expressly contained in this Consent Decree.

## COURT DECREE

The Court, having reviewed and considered this Consent Decree, and having determined that it is fair and reasonable, consistent with the Clean Water Act, in the public interest, and fully settles the dispute alleged in the Complaint, hereby approves and enters this Consent Decree.

IT IS SO ORDERED.

Dated and entered this _____ day of _____, 20__.

_____
United States District Judge

Consented and agreed to by:

**ON BEHALF OF THE UNITED STATES:**

_____          Date: _____
PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C. 20044
Tel: (202) 353-7792
Fax: (202) 514-8865
perry.rosen@usdoj.gov

DONALD E. CLARK
ACTING UNITED STATES ATTORNEY

JOHN OSBORN
Assistant United States Attorney
District of Maine
100 Middle St. #6
Portland, Maine 04101

**ON BEHALF OF U.S. ENVIRONMENTAL PROTECTION AGENCY:**

Nathan Mark Pollins
Digitally signed by Nathan Mark Pollins
Date: 2021.05.04 17:17:52 -04'00'

Date: _____

MARK POLLINS
Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

CARL DIERKER
Digitally signed by CARL DIERKER
Date: 2021.04.30 15:41:16 -04'00'

Date: _____

CARL DIERKER
Regional Counsel
U.S. Environmental Protection Agency
Region 1
Mail Code: ORC4-6
5 Post Office Square
Boston, MA 2109-3912

ANDREA SIMPSON
Digitally signed by ANDREA SIMPSON
Date: 2021.04.29 08:20:53 -04'00'

Date: _____

ANDREA SIMPSON
Senior Enforcement Counsel
U.S Environmental Protection Agency
Region 1
Mail Code:  ORC4-2
5 Post Office Square
Boston, MA 02109-3912

**ON BEHALF OF DEFENDANT MAIETTA ENTERPRISES, INC.:**

Date: 4-28-2021

VINCENT MAIETTA
President
Maietta Enterprises, Inc.
154 Pleasant Hill Road
Scarborough, Maine 04074


**ON BEHALF OF DEFENDANT MAIETTA CONSTRUCTION, INC.**

Date: 4-28-2021

VINCENT MAIETTA
President
Maietta Construction
154 Pleasant Hill Road
Scarborough, Maine 04074


**ON BEHALF OF DEFENDANT M7 LAND CO.**

Date: 4-28-2021

VINCENT MAIETTA
President
M7 Land Co., LLC
154 Pleasant Hill Road
Scarborough, Maine 04074


**AGREED TO AS TO FORM BY COUNSEL FOR DEFENDANTS MAIETTA
ENTERPRISES, INC, MAIETTA CONSTRUCTION, INC., AND M7 LAND CO.**

Date: 4-28-2021

KATHERINE JOYCE  RACHAEL BECKER MCENTEE
Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104-5029