ATTACHMENT 2

To Consent Decree

### United States v. Maietta Enterprises, Inc., Maietta Construction, Inc., and M7 Land Co., LLC

SCOPE OF WORK FOR WETLAND RESTORATION AND MITIGATION

A.    GENERAL PROVISIONS.

This Attachment generally describes the activities comprising the injunctive relief required by Section VI of the Consent Decree in the matter of United States v. Maietta Enterprises, Inc, Maietta Construction, Inc., and M7 Land Co., LLC (the "Consent Decree"). It provides the requirements for the restoration, mitigation, and monitoring work to be performed by Maietta Enterprises, Inc. and Maietta Construction, Inc., (hereinafter collectively referred to as "Defendants") at 150 Pleasant Hill Road, Scarborough, Maine. The portions of the Site subject to the requirements set forth in this Scope of Work are shown on Attachment 1 to the Consent Decree.

1. All restoration, mitigation, monitoring and other work described herein shall be done in accordance with a work plan ("Work Plan") developed pursuant to Section H, below, by an appropriately licensed engineer, qualified wetland scientist, and licensed aquatic weed control specialist and shall be implemented under the supervision of such professionals or other appropriate professionals as mutually agreed to by the United States and Defendants. The Work Plan shall be subject to the United States review and approval pursuant to Section I, below. Portions of the Site not otherwise subject to the requirements set forth in this Scope of Work may be used for other

purposes, subject to applicable federal, state, and local laws and regulations.

**B.    Project Area A – Stormwater Management and Protective Buffer**

Defendants shall create a sloped vegetated upland buffer in Project Area A, as generally depicted on Exhibit 1 hereto, and implement stormwater controls as follows:

1. The sloped vegetated buffer shall be constructed entirely in Project Area A, shall be built at a slope of not more than 2:1, and no less than 50 feet in width.

2. The sloped vegetated buffer shall be designed by an appropriately licensed engineer. Best management practices set forth in the *Maine Department of Environmental Protection ("ME DEP") Erosion and Sediment Control Best Management Practices (BMPs) Manual for Designers and Engineers (October 2016) and the ME DEP Stormwater BMP Manual* shall be followed, as appropriate, to ensure stability and to maximize the buffer's ability to control stormwater, erosion, and sedimentation. The sloped vegetated upland buffer shall be amended with suitable natural or manmade topsoil and hydro-seeded with a soil stabilization mix and stabilizing emulsion.

3. Defendants also shall develop a stormwater management plan and install permanent measures, as appropriate, such as soil infiltration basins, fencing, or berms.

**C.    Project Area B (4.8 Acres) - Wetland Restoration**

Defendants shall establish through restoration no less than 4.8 palustrine forested and scrub-shrub wetland acres in Project Area B with micro-topography characteristic of the undisturbed freshwater forested wetland in Project Area D. However, subject to United States approval, Defendants may over-excavate up to 1 acre in the southern portion of Project Area B, which is currently dominated by invasive Common reed (*Phragmites australis*), to create an open water ponded area. If an open water ponded area is approved by the United States, the

wetland acreage to be restored in Project Area B shall be correspondingly reduced. Restoration work in Project Area B shall comply with the following technical specifications and performance standards as well as the technical specifications and performance standards set forth in Section G, below, and in the Work Plan.

1. All construction debris and other fill shall be removed from Project Area B and Project Area B shall be regraded, excavated, or over-excavated, as necessary, to establish wetland hydrology and accommodate the addition of suitable topsoil, if and as needed, to support hydrophytic vegetation. Final elevations of the restored wetland shall be determined by the grade of undisturbed reference wetlands in Project Area D and/or by excavating down to undisturbed native topsoil, buried under the fill material. Graded surfaces shall be left rough rather than graded smooth to simulate naturally occurring micro-topography characteristic of the surrounding undisturbed reference wetlands. If there is evidence of significant compaction of the underlying native soils, the soils shall be loosened/tilled prior to seeding.

2. Consistent with Section G.2 below, Defendants shall develop and implement an invasive species management plan in consultation with a licensed aquatic weed control specialist. Such management plan shall have the goal of removing and controlling the return of existing invasive species, including *Phragmites*.

3. No less than 4.8 acres in Project Area B shall be seeded with native wetland conservation seed mix and planted with native hydrophytic scrub/shrub and tree species in densities of 500 trees and shrubs per acre. Scrub/shrub and tree species shall be no less than 18 inches in height, and must have a Northcentral and Northeast regional indicator status of FAC, FACW, or OBL as defined by the U.S. Army Corps

of Engineers' *2016 National Wetland Plant List* dated 5/12/16 *(*hereafter *"2016 Wetland Plant List")*, provided, however, that the combination of scrub/shrub and tree species planted in Project Area B reflects the natural diversity of native wetland species present in Project Areas C and D.

4. In order to control the spread of *Phragmites* and other invasive species through competition and shading, up to 2 acres of Project Area B may be planted with native evergreen species in densities of 500 or more stems per acre. Evergreen species shall be no less than 18 inches tall and at least 50% of the evergreen species planted shall be FAC, FACW, or OBL, as defined by the *2016 Wetland Plant List.* The location for any such evergreen plantings shall be identified in the Work Plan and is subject to United States approval.

5. If a ponded area is to be created in Project Area B, Defendants shall identify the proposed location of the ponded area in the Work Plan and describe the method by which such pond will be constructed. The banks of the pond shall be graded steeply in order to reduce opportunity of invasive species re-establishment along the banks. The appropriate grade shall be determined in consultation with a qualified engineer. Additionally, where feasible due to steep grading, the shoreline and immediate borders of the ponded area shall be seeded with a native wetland conservation mix, and planted with native evergreen species in densities of 500 or more stems per acre in order to control the spread of *Phragmites* and other invasive species, through competition and shading. Evergreen species shall be no less than 18 inches tall and at least 50% of the evergreen species planted shall be FAC, FACW, or OBL, as defined by the *2016 Wetland Plant List.*

6. Any portion of Project Area B not ponded or planted with native evergreen species shall be planted with native wetland scrub/shrub or tree species consistent with the technical specifications set forth in Section C.3, above.

**D. Project Area C (1.2 Acres) – Wetland Restoration and Enhancement**

Defendants shall restore and enhance 1.2 wetland acres in Area C through invasive species management and spot removal of fill, as follows:

1. Allow existing native hydrophytic vegetation to mature and repopulate along existing trajectories, except as indicated in Section D.2, below. In areas where fill material is interfering with establishment of native vegetation, all construction debris and other fill material shall be removed down to the buried, native hydric topsoil and planted with wetland species.

2. Consistent with Section G.2 below, Defendants shall develop and implement an invasive species management plan in consultation with a licensed aquatic weed control specialist. Such management plan shall have the goal of removing and controlling the return of existing invasive species, including *Phragmites*.

**E. Project Area D (7.5 Acres) – Mitigation in Largely Undisturbed Wetlands**

1. Block historic drainage ditches at down gradient end with suitable soil medium and seed the ditch with a native wetland seed mix.

2. Consistent with Section G.2 below, Defendants shall develop and implement an invasive species management plan in consultation with a licensed aquatic weed control specialist. Such management plan shall have the goal of removing and controlling the return of existing invasive species, including *Phragmites*.

**F. Preservation and Use Restrictions (Approximately 14.5 Acres)**

Defendants shall establish an enforceable Conservation Easement, as described below, to permanently protect all portions of the Site subject to the injunctive relief requirements set forth in this Attachment.

1. The total acreage subject to the conservation easement shall be no less than 14.5 acres and shall include the vegetated protective buffer/storm water infrastructure in Project Area A and the wetland restoration/mitigation areas in Project Areas B, C, and D. See Exhibit 2 hereto (Map of Conservation Easement).

2. The Conservation Easement shall ensure that wetlands, including the hydrology, habitat, and water quality benefits thereof, as well as the sloped vegetated buffer and open water areas, if any, are preserved in perpetuity.

3. The Conservation Easement shall include prohibitions on the building of structures and the performance of timbering, farming, and grazing activities; restrictions on mowing and clearing of vegetation (other than for invasive species management, the removal of dead wood and the protecting of human safety); restrictions on draining or filling wetlands; prohibitions on the use motorized vehicles, except for use in planting, maintenance, and management of the desired habitat; a requirement that the sloped vegetated buffer be properly maintained; and any other restrictions and requirements necessary to achieve the purposes of the Conservation Easement. Defendants shall establish the Conservation Easement pursuant to the Uniform Conservation Easement Act, Title 33 Maine Revised Statutes Annotated ("M.R.S.A."), Sections 476-479C, or other applicable Maine law if the Uniform Conservation Easement Act is not appropriate. The Conservation Easement shall be finalized and properly recorded no later than 6 months after completion of active

construction measures on the Site, unless the United States has agreed in writing to an extension of this time. The Conservation Easement shall be enforceable under Maine law, and granted in favor of a governmental or not-for-profit entity approved in writing by the United States and authorized to hold such an interest pursuant to 33 M.R.S.A. Section 476(2) ("Easement Holder"). The Conservation Easement shall grant the United States a third-party right of enforcement as defined by 33 M.R.S.A. Section 476(4).

4.  Prior to establishing the Conservation Easement, Defendants shall submit a draft conservation easement to the United States for review and approval. The draft conservation easement shall be submitted to the United States no later than 4 months after completion of final grading of the Site and construction of the vegetative buffer and associated storm water management infrastructure. Following approval by the United States, Defendants shall use best efforts to finalize the Conservation Easement promptly, and record it in the manner required by 33 M.R.S.A. Section 477. Defendants shall mail a copy of the final Conservation Easement to the United States within 60 days of its recording.

## G.    Technical Specifications

The Work Plan shall include technical specifications and performance standards including, but not limited to, specifications and standards for hydrology, topsoil composition and depth, plantings, seeding, erosion control, control of invasive species, and other factors necessary to ensure that the required restoration and mitigation work achieves the goals set forth above for each project area. The technical specifications and performance standards of general application set forth below, as well as the technical specifications and performance standards

specific to a particular project area shall be included in the Work Plans required by Section H. Any additional technical specifications and performance standards shall be approved by the United States pursuant to Section I, and for wetland areas, must be consistent with the Corps of Engineers New England District Compensatory Mitigation Guidance dated September 2016 ("*Corps Mitigation Guidance*").[1]

1. Upland Buffer. All soils used for the planting media on the upland vegetative buffer shall have a sufficient carbon content to support the establishment of vegetation (approximately 4-12% carbon, or 7-21% organic matter on a dry weight basis). Percentage of organic carbon and/or organic matter in the work plan shall be tailored to reflect the needs of the specific vegetation to be planted. Use of on-site soil is permissible provided it meets this criteria and subject to United States approval. Planted areas must also be amended with a mulch layer having a minimum thickness of 3 inches.

Vegetative cover must be established to at least 85% areal coverage of both woody and herbaceous species combined, and maintained during the monitoring period set forth below, unless the United States approves a different density standard based on site conditions. The type of vegetation used in the filter strip is subject to the United States approval, and must utilize dense growth patterns such as turf-forming grasses and dense forest floor vegetation.

2. Wetland Areas. Defendants shall successfully establish the wetland acreage and wetland classes specified in Sections C through E herein. Upon completion of the fourth year monitoring period, all wetland areas restored, enhanced, or otherwise established pursuant to

---

[1] The purpose of the *Corps Mitigation Guidance* is to provide guidance on the restoration and mitigation requirements for wetlands in New England. The *Corps Mitigation Guidance* acknowledges the need for flexibility and states that variances are permissible to reflect site specific conditions. In the event of an inconsistency between the *Corps Mitigation Guidance* and this Attachment or an approved work plan developed pursuant to this Attachment, the terms of this Attachment or approved work plan shall control.

this Attachment shall, at a minimum, meet the federal wetland criteria outlined in the *Corps of Engineers Wetlands Delineation Manual* dated January 1987 ("Corps Delineation Manual"), the *Regional Supplement to the Corps of Engineers Wetland Delineation Manual—North Central and Northeast Region* (version 2.0) dated January 2012 ("*Corps Northeast Regional Supplement*"), and the *2016 Corps Compensatory Mitigation Guidance.*

    a.  *Hydrology*: The Work Plan shall include a detailed grading plan intended to replicate pit and mound topography. After completion of the earthwork necessary to achieve required surface elevations, the water table shall be within 12 inches of the surface for a period of consecutive days that is at least 14 days during the growing season. For the purposes of this Attachment, and consistent with the *Corps Northeast Regional Supplement*, the growing season shall be determined by the median frost free dates of 28 degree Fahrenheit (-2.2 degrees Celsius) air temperature in spring and fall based on long-term records gathered at the National Weather Center meteorological stations and reported in WETS tables available from the Natural Resource Conservation Service National Water and Climate Center at *http://www.wcc.nrcs.usda.gov/climate/wetlands.ht1ml.*

    b.  *Vegetation*: Defendants shall submit a detailed planting plan to the United States for approval with the relevant Work Plan that effectuates the goals and technical standards for wetland and other vegetation in each Project Area. In addition, the planting plan shall incorporate, as appropriate, the following technical specifications: (1) species used in conjunction with the restoration and mitigation required by this Attachment shall be selected

based on their value as habitat to native wildlife species and their ability to stabilize disturbed areas; (2) the planting of woody vegetation in all Project Areas shall be done by hand to help assure successful establishment.

At the end of the monitoring period, Project Area B shall have at least 500 native woody stems per acre and an 80% areal coverage of both woody and herbaceous species combined, unless the United States approves a different density standard based on site conditions. In addition, at least 50% of the woody species must (1) have an indicator status of FAC, FACW, or OBL as defined by the Corps of Engineers *2016 Regional Plant List* and (2) the combination of woody species planted present in the creation areas shall reflect the natural diversity of wetland species present in appropriate undisturbed reference areas.

c. Invasive Species Control Plan ("ISCP"). The Work Plan shall include an ISCP developed in consultation with a qualified wetland scientist and licensed aquatic weed control specialist. The ISCP shall include measures for the control of invasive species that are listed within the *Corps Compensatory Mitigation Guidance*. Specifically, the ISCP shall provide a detailed strategy to remove and prevent the reestablishment of *Phragmites*, Multiflora rose (*Rosa multiflora*), and Japanese knotweed (*Fallopia japonica*) on the Site. The ISMP shall be designed to ensure that upon completion of the monitoring period, invasive species shall be present in no more than 5% of the vegetated areas of the Site.

H.    **Work Plan**

No later than 60 calendar days from entry of the Consent Decree, a detailed Work Plan for performing the restoration, mitigation, monitoring and other work required by this Attachment shall be submitted to the United States for approval. The Work Plan shall be developed by an experienced wetland scientist, and, as necessary, an appropriately licensed professional engineer and/or qualified hydrologist. The Work Plan shall include, in addition to the above-stated requirements, the following:

1.  Detailed Description of Work. A detailed description of the restoration and mitigation work to be performed in each Project Area.

    a.  For Project Area A, the Work Plan shall contain a detailed description of the work to be performed to create the sloped vegetative buffer, including stabilization and planting plans, engineering plans, as well as a stormwater management plan identifying the location and type of permanent stormwater control measures to be implemented.

    b.  For Project Area B, and any portion of Project Area C to be restored to wetland status, the Work Plan shall include a detailed grading plan intended to replicate pit and mound topography and support wetland vegetation, a detailed planting plan, and concise technical specifications and ecological performance standards including, but not limited to, specifications and standards for hydrology, hydric soils, plantings, seeding, erosion control, control of invasive species, coarse woody material and other factors necessary to ensure that the required restoration and mitigation work achieves the goals set forth above for each Project Area.

        i.    If a ponded area is to be created in Project Area B, the Work Plan shall identify the location of such pond, describe the method by which the pond shall be constructed, and set forth technical specifications and performance standards applicable to the pond and the evergreen plantings surrounding the pond.

    c.   For Project Area D, the Work Plan shall contain a detailed description of the work to be performed to block the historic drainage ditches, including location, height, and type of material used to maintain wetland hydrology in the ditches and surrounding soils.

2.   <u>Erosion and Sedimentation Controls</u>. The Work Plan shall detail the type, timing, placement, and maintenance of erosion and sedimentation controls to prevent the transport of sediments and other pollutants into protected resources, surface waters, and off the Project Areas.

3.   <u>Appropriate Supervision</u>. The Work Plan shall specify that (1) restoration activities involving earth moving for the purpose of establishing wetland areas shall be supervised in the field by a wetland scientist with experience in wetland restoration and construction and wetland hydrology and/or a qualified engineer experienced in wetland restoration; (2) restoration activities involving planting and seeding shall be supervised by a wetland scientist with a working knowledge of botany in addition to experience in wetland restoration and construction and wetland hydrology; (3) activities involving invasive species control shall be performed in accordance with an invasive species control plan (ISCP) prepared in consultation with a licensed

aquatic weed control specialist; (4) construction of the sloped vegetated upland buffer shall be performed in accordance with plans prepared by and under the supervision of an appropriately licensed engineer; (5) the stormwater management plan shall be prepared and implemented under the supervision of an appropriate consultant; and (6) all of the professionals described above shall be retained to supervise and conduct monitoring after the restoration/mitigation activities are completed.

4. Schedule for Completion. The Work Plan shall include a schedule for completion. The schedule shall be phased to ensure that construction of the sloped vegetated upland buffer in Project Area A, and implementation of stormwater control measures are completed prior to restoration of wetland areas in Project Area B. In addition, the schedule shall state that all earth work and planting required by this Attachment shall be completed no later than October 2023.

5. Construction Status Reporting. The Work Plan shall include a reporting plan to assess the progress of the work required by this Attachment, and to assess the success of such work in relation to the goals and standards set forth herein and in the applicable work plan. At a minimum, the construction status reporting plan shall require Defendants to submit to the United States the following:

   a. *Construction Status Reporting:* Defendants shall provide the United States with monthly status reports for each Project Area via email during periods of active construction and planting phases of the injunctive relief required by this Attachment. Such monthly status reports shall include a (1) description of work

undertaken during the reporting period, (2) a description of any problems encountered, and (3) a description of and schedule for actions taken, or to be taken, to address problems encountered. Alternatively, status reports required under this section may be provided on any other schedule proposed by Defendants and accepted in writing by the United States.

b. *Construction Completion Report:* The Work Plan shall require Defendants to submit a Construction Completion Report with surveyed as-built plans for the sloped vegetative upland buffer in Project Area A, and all wetland areas restored, mitigated, or otherwise established pursuant to this Consent Decree in Project Areas B and C. As-built plans shall be submitted to the United States within 60 days after completion of active construction measures in a given Project Area, and shall be prepared and certified by an appropriately licensed surveyor. In addition, the Construction Completion Report shall provide technical documentation of on-site stormwater management and stabilization of the sloped vegetative upland buffer. The Construction Completion Report shall include supporting documentation, such as photographs, field notes, analytical data confirming the properties of materials used to construct the buffer strip, and other documentation appropriate to establish compliance with the plans and technical specifications detailed

above.

*6*. Wetland Monitoring  and Corrective Actions: Defendants shall, under the Work Plan, submit to the United States for approval a Wetland Monitoring  Plan consistent with the *Corps Mitigation Guidan*ce that requires technical documentation  of the presence of wetland hydrology,  hydric soil indicators and hydrophytic  vegetation for all wetland areas restored, mitigated,  or otherwise established  in each Project Area pursuant to the Consent Decree. The Wetland Monitoring  Plan shall include an adaptive management program and remediation  recommendations  that provides early indication  of potential problems  and directions  for corrective action to be taken subject to the United States approval. Monitoring  of wetland areas shall be conducted annually during the growing season (May-October) for at least six (6) full growing seasons following  seeding and planting. Monitoring  will take place twice per season during the first through fourth years following  planting. One visit will take place in the spring, and will include  a general site walk and assessment of general site health, an assessment of any winter damage and in order to determine  any correction needs. A second visit will take place between June and October to assess plant mortality/vitality  and to gather data for the annual monitoring  reports.

       *a. Annual Monitoring Reports*. Defendants shall submit by December 31st of each year, annual monitoring  reports assessing the success of the work required by this Consent Decree in relation  to the goals and standards set forth herein and in the applicable  Work Plan

consistent with the requirements of the monitoring plan.

       The success of the mitigation will be evaluated at the end of year four to determine if additional corrective measures are necessary. At the end of the fourth year monitoring period, Defendants shall submit a monitoring report supported by technical documentation demonstrating that the technical and performance standards for wetland establishment, hydrology, vegetative survival and cover rates, and invasive species control set forth in this Appendix and in the relevant Work Plan have been met. Such report shall summarize the original or modified restoration and mitigation goals, discuss the level of attainment of these in each Area, and describe significant problems and solutions during construction and maintenance (monitoring) of the restoration and mitigation Areas.

       Provided the site meets the success criteria identified within the Work Plan, the fourth year will be the final monitoring year during which full reports are provided. Two additional site visits will be made, once during the fifth and once during the sixth year following construction. Truncated reports will be provided during these years, including general information on site health and photographs.

    b. Corrective Actions

       If the Site does not achieve all of the success standards set forth in Section G of this Attachment or the Work Plan, or if it is clear that the objectives of the restoration and enhancement areas have not been met, the United States may require

corrective actions outlined below, and may extend the monitoring period by up to three years to ensure the presence of wetland hydrology and vegetation in all wetland acreage in all Project Areas to be restored, mitigated or otherwise established by this Attachment.

- Vegetated Buffer:  Defendants shall provide evidence establishing the continued stability of the sloped vegetated upland buffer in Project Area A and successful stormwater management. The United States may require minor regrading or planting if evidence, such as channelized flow and/or slope erosion, indicates slope instability on the vegetative buffer.  All vegetation must be dense and healthy. If vegetation has greater than 50 percent damage, the area must be reestablished in accordance with the original specifications and the inspection requirements presented below.

- Vegetation:  The United States may require remedial re-vegetation measures for any portion of the Area B not meeting the survival and cover rates set forth above by year four, including but not limited to, the following:

i. re-seeding with a native inland wetland conservation mix;

ii. planting with native wetland scrub-shrub or trees species in densities to achieve not less than 500 stems per acre, unless the United States has approved otherwise.  All such plantings shall be no less than 18 inches in height;

iii. extension of the monitoring period by no more than three years for re-seeded or planted areas to ensure successful establishment of vegetation in the re-seed and/or re-planted areas; and

iv. minor re-grading or other hydrologic remedial actions based on monitoring reports.

Defendants shall, in consultation with the United States, prepare a remedial planting plan for any portion of Area B not meeting the performance standards for survival and cover rates set forth above by this time. Such remedial planting plan shall be submitted to the United States for review and approval with the fourth-year monitoring report.

- <u>Invasive Species:</u> the United States may require remedial measures for any Area specified in Sections B through E herein, not meeting the invasive species performance standard set forth above, by including but not limited to, the following:

i. re-evaluation of ISMP;

ii. extension of the monitoring period by no more than 3 years

*c. Extension of Monitoring Period:* The monitoring period may be extended by up to three (3) years, as the United States deems necessary, to ensure the presence of wetland hydrology and vegetation in all wetland areas to be restored or otherwise established pursuant to this Attachment.

<u>7. Permitting:</u> It is Defendants' sole responsibility to obtain all federal, state, and local permits and approvals necessary to complete the injunctive relief required by this Consent Order. The Work Plan shall identify the relevant federal, state, and local permits and approvals necessary for completion of the work required, and provide a schedule for timely attainment of all such permits and approvals. the United States will assist as appropriate in conversations with state and local authorities to facilitate state and local permitting for United States-approved activities.

I.      **Work Plan Approval and Modification**.

1. Within a thirty (30) calendar days after receipt of a work plan or other item submitted to the United States for approval under this Attachment, the United States shall in writing either: (a) approve, in whole or in part, the work plan or other submission; (b) approve, in whole or in part, the work plan or other submission, upon specified conditions; (c) modify, in whole or in part, the work plan or other submission to cure deficiencies; (d) disapprove, in whole or in part, the work plan or other submission, directing that Defendants modify the submission; or (e) any combination of the above.

2. If the submission is approved, Defendants shall take all actions required by the submission in accordance with the schedules and requirements of the submission, as approved. If the submission is conditionally approved or approved only in part, Defendants shall, upon written direction from the United States, take all actions required by the approved portion of the submission that the United States determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions pursuant to Section VIII of the Consent Decree.

3. If the submission is disapproved in whole or in part, Defendants shall, within 30 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the submission for approval, in accordance with the preceding Paragraphs, unless Defendants dispute the basis for the disapproval, in which case Defendants shall invoke the dispute resolution provisions in Section VIII of the Consent Decree.

4.   The 30-day period to cure applies only to deficiencies identified by the United States in accordance with this Paragraph. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

5.   If a resubmitted work plan, or portion thereof, is disapproved in whole or in part, the United States may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendants' right to invoke the dispute resolution provisions in Section VIII of the Consent Decree.

6.   At any time after the United States approves a Work Plan, the United States or Defendants may propose modifications to an approved Work Plan. Proposed modifications are subject to the United States approval process set forth above in Section I.1 and I.5. and, after approval, may be incorporated into Work Plan upon without further action the Court. The Parties shall resolve any disputes regarding the proposed modifications pursuant to Section VIII of the Consent Decree.

7.   Defendants shall carry out all restoration, mitigation, monitoring and other work required by this Attachment in accordance with the Work Plan as approved by the United States, including any subsequently incorporated modifications, and the schedule set forth therein unless it can be demonstrated to the United States' satisfaction that weather constraints or other unpreventable occurrences prevented the work to occur on schedule.

**J.   ACCESS**:

Defendants shall provide reasonable access to the Site, and exert their best efforts to obtain reasonable access to any off-Site areas to which access is necessary to implement the

work detailed in this Attachment. Defendants shall provide access to all records and documentation reasonably related to the conditions at the Site and restoration and compensatory mitigation work activities conducted pursuant to this Attachment. Such access must be provided to the United States, the Corps, and ME DEP, and to their employees, contractors, and representatives. These individuals shall be permitted to move freely at the Site, and, if access is granted thereto, appropriate off-Site areas, in order to conduct actions which the United States determines to be necessary to ensure the successful implementation and evaluation of the injunctive relief set forth in this Attachment. While on Site, the United States, Corps, and ME DEP will exercise due care and act in accordance with all applicable safety policies and procedures.



**Exhibit 1 to SOW: Maietta Wetland Restoration and Mitigation Areas**

Area A (Sloped Vegetated Buffer): ≥ 50 feet
Area B: 4.8 acres
Area C: 1.2 acres
Area D: 7.5 acres

EPA Wetland Boundary

Toe of Slope based on Soil Borings

Scale   1 : 2,600

0        50 Meters

0    100        200 Feet

Site features courtesy
Sebago Technics
Basemap: ESRI and the
GIS User Community
US EPA  R1 GIS Center
Map #12117, 6/11/2020



**Exhibit 2 to SOW: Map of Conservation Easement Area**

Conservation Easement Area

Area A (Sloped Vegetated Buffer): ≥ 50 feet
Area B: 4.8 acres
Area C: 1.2 acres
Area D: 7.5 acres

C

D

B

A

Pleasant Hill Road

Maietta Drive

Highland Avenue

EPA Wetland Boundary

Toe of Slope based on Soil Borings

EPA

Scale    1 : 2,600

0                    50 Meters

0        100        200 Feet

Site features courtesy
Sebago Technics
Basemap: ESRI and the
GIS User Community
US EPA  R1 GIS Center
Map #12117, 6/11/2020