## U.S. v. MAIETTA CONSTRUCTION, ET AL. TRUST AGREEMENT

This TRUST AGREEMENT ("Agreement") entered into as of this __28th__ day of _____April_____, 2021 (the "Effective Date") by and among **MAIETTA CONSTRUCTION, INC.**, and **MAIETTA ENTERPRISES, INC.**, dissolved entities by and through their former President Vincent Maietta, **M7 LAND CO.**, LLC, and **VINCENT MAIETTA**, in his capacity as Trustee of the Pleasant Hill Trust I a/k/a The Pleasant Hill Trust u/d/t dated November 7, 1994, as amended (together, the "Settlor"), and **TIMOTHY NORTON**, in his capacity as Trustee under the terms of this Agreement ("Trustee") (the Settlor and the Trustee are sometimes hereinafter collectively referred to as the "Parties").

### RECITALS

WHEREAS, reference is made to that certain Consent Decree in the matter of *U.S. v. Maietta Construction, Inc., et al.*, executed by the Settlor and the United States of America, on behalf of the U.S. Environmental Protection Agency ("EPA"), to be recorded in the Cumberland County Registry of Deeds within 15 days after entry by the United States District Court for the District of Maine (the "Consent Decree");

WHEREAS, the Settlor has agreed to transfer the Collateral to the Fund (as those terms are hereinafter defined) to secure the performance and satisfaction of all actions and obligations required to be performed by the Settlor under the Consent Decree, all in accordance with the terms and conditions of this Agreement and the Consent Decree; and

WHEREAS, the Settlor has selected the Trustee, with the approval of the United States, to act as trustee in the management of the Collateral and administration of the Fund, and the Trustee is willing to act as trustee in the management of the Collateral and administration of the Fund, all in accordance with the terms and conditions of this Agreement and the Consent Decree.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settlor and the Trustee hereby agree as follows:

### AGREEMENT

SECTION 1. ESTABLISHMENT OF FUND.

(a) The Settlor and the Trustee hereby establish an irrevocable trust fund, which shall be known as the 150 Pleasant Hill Road Trust (hereinafter referred to as the "Fund") for the benefit of the party or parties (each, a "Performing Party" and together, the "Performing Parties") carrying out all of the requirements described in Paragraphs 16, 17 and 21 of the Consent Decree and in the Scope of Work, attached to the Consent Decree as Attachment 2 (the "Work"). For purposes of this Agreement, all cash, securities, and other property (whether real or personal) of the Settlor that Settlor has contributed or hereafter contributes to the Fund in accordance with the terms and conditions of this Agreement, less any payments or distributions made by the Trustee pursuant to this Agreement, is hereinafter collectively referred to as the "Collateral." No person or entity shall

have access to or use of the Collateral except as herein provided. The Collateral shall be held by the Trustee, IN TRUST, as hereinafter provided.

(b) Within 14 days after execution of this Agreement by all of the Parties, the Settlor shall execute and deliver to the Trustee such deeds and other instruments as shall be reasonable or necessary in the Trustee's discretion to transfer into the Fund the Collateral identified on Exhibit A attached hereto, which Collateral has a cumulative appraised value of at least $950,000.00 (the "Payment Guarantee Amount") as of the Effective Date as determined by appraisal prepared by an appraiser licensed to prepare such reports in the State of Maine. It is the intent of the Parties that Exhibit A shall at all times reflect a full and complete list of all Collateral comprising the Fund. If the Collateral, or any portion thereof, is released, substituted, sold, liquidated, or otherwise disposed of in accordance with the terms and conditions of this Agreement, the Parties agree to execute and deliver such amendment(s) to this Agreement as shall be reasonable and necessary to amend Exhibit A such that it reflects a full and complete list of all Collateral then comprising the Fund.

(c) Once Collateral has been placed into the Fund, the Trustee agrees that it will not, unless directed pursuant to the terms and conditions of this Agreement or a final, non-appealable judgment by a court of competent jurisdiction, release, substitute, sell, liquidate, or otherwise dispose of the Collateral or any portion thereof.

(d) The Settlor agrees to pay all fees charged by the Trustee in connection with the establishment and maintenance of the Fund and the performance of the Trustee's duties and obligations hereunder.

(e) The Parties agree that the normal principles of trust law apply, and that legal title of the Collateral now or hereafter comprising the Fund shall be in the Trust, and equitable and beneficial title shall be in the Settlor; provided, however, that the Settlor's equitable and beneficial title in and to the Collateral shall not prevent the Trustee from executing its powers and discretions conferred upon the Trustee by other provisions of this Agreement.

SECTION 2. EXPRESS POWERS OF TRUSTEE. Without in any way limiting the powers and discretions conferred upon the Trustee by the other provisions of this Agreement or by law, the Trustee is expressly authorized and empowered:

(a) To make, execute, acknowledge, and deliver any and all documents reasonable or necessary to transfer Collateral into and out of the Fund in accordance with the terms and conditions of this Agreement.

(b) To deposit any cash in the Fund in an interest-bearing account or accounts maintained by the Trustee to the extent insured by an agency of the Federal or State government.

SECTION 3. PERFORMANCE OF WORK. If the Settlor shall fail to perform the Work (as that term is defined in the Consent Decree) in accordance with the terms and conditions of the Consent Decree, or if the Settlor shall fail to make the payment due under in accordance with paragraphs 16 and 17 of the Consent Decree, the United States shall first furnish written notice of such failure

to the Settlor in accordance with the notice procedures set forth in Section 9 hereof (the "Notice of Default") and Paragraph 23.D of the Consent Decree. If the Settlor shall fail to cure the default described in the Notice of Default to the satisfaction of the United States on or before the Cure Deadline, the United States shall have the right (but not the obligation) to direct the Trustee, by written notice to the Trustee in accordance with the notice procedures set forth in Section 9 hereof (the "Notice of Exercise of Payment Guarantee"), to sell, liquidate, or otherwise dispose of the Collateral in accordance with the terms and conditions of Section 6 hereof and use the proceeds therefrom to cause the Work to be performed in accordance with the terms and conditions of the Consent Decree.

SECTION 4. REDUCTION OF PAYMENT GUARANTEE AMOUNT. If Settlor believes that the estimated cost to complete the remaining Work has diminished below the amount set forth in Section 1(b) above, Settlor may petition the United States for a reduction in the amount of the Payment Guarantee provided that the amount of the Payment Guarantee is equal to or exceeds the estimated cost of the remaining Work to be performed. Settlor shall submit a written proposal for such reduction to the United States, which shall specify, at a minimum, the estimated cost of the remaining Work to be performed and the basis upon which such cost was calculated. If, after receiving such a proposal from Settlor, the United States determines that (1) the estimated cost of the remaining Work is less than the Payment Guarantee and (2) the amount of the proposed reduction is appropriate, the United States shall reduce the Payment Guarantee consistent with Settlor's request, such reduction not to be unreasonably withheld or delayed, and in no case more than ninety (90) days after receipt of Settlor's proposal. Upon notice from the United States that the United States has agreed to reduce the amount of the Payment Guarantee, the Trustee shall release title to the property that the United States approved for removal from the Trust. The Trustee shall send the United States written confirmation of the transaction transferring legal title of any property out of the Trust.

SECTION 5. SUBSTITUTION OF COLLATERAL. If Settlor desires to change the nature of the funds or property that comprise Payment Guarantee provided pursuant to this Section, Settlor may during the course of the Work, submit a written request to the United States for a change in the properties or funds comprising the Payment Guarantee. The United States will respond in writing to any such request by Defendants by either accepting or rejecting the proposed revised payment guarantee. If the proposed revision of the Payment Guarantee is accepted by the United States, the Trust Agreement shall be amended in accordance with Section 14 below.

SECTION 6. SALE, LIQUIDATION, OR DISPOSAL OF COLLATERAL. If the Trustee receives a copy of written notice sent by the United States to the Settlor that the Settlor has failed to perform the Work in accordance with and has breached its obligations under the Consent Decree and Attachment 2 to the Consent Decree, and has not cured such default prior to the expiration of all applicable notice, grace, and cure periods, the Trustee shall, without inquiry or interference from or by the Settlor, sell, liquidate, or otherwise dispose of the Collateral for such amount(s) and on such terms and conditions as the Trustee shall determine in its sole discretion, and thereafter make such cash disbursement(s) from the Fund to the Performing Party or Performing Parties as shall be reasonable and necessary to complete the Work, all subject to the requirements of Section 8 hereof, except that the Trustee shall not make any cash disbursement(s) to the Settlor.

SECTION 7. TAXES, COSTS, AND EXPENSES. To the extent not paid from income from the Collateral, the Settlor shall pay when due and in the ordinary course, directly to the taxing authority, or to others, all taxes and assessments now or hereafter assessed or levied against the Collateral, all brokerage commissions and appraisal costs incurred by the Trustee in connection with the administration of the Fund, all mortgage payments, and all other costs and expenses of any kind or nature whatsoever arising from or related to the Collateral. The Trustee shall monitor the status of all such costs and expenses affecting the Collateral; and if the Settlor shall fail for any reason to make any payment(s) when due, the Trustee shall make such payment(s) from the Fund on the Settlor's behalf as shall be reasonable and necessary to protect the Collateral and any unreimbursed advance shall be reimbursable to the Trustee within the meaning of Section 709 of the Maine Uniform Trust Code by the Settlor.

SECTION 8. TRUSTEE MANAGEMENT. The Trustee shall administer the Fund and perform all duties and obligations required to be performed by the Trustee hereunder with the same care, skill, prudence, and diligence which persons acting in a like capacity and familiar with such matters would use in the administration of a Fund of a like character, with like aims, and established for a like purpose.

SECTION 9. NOTICE. Any notices required or permitted to be given hereunder shall be sufficient if in writing and if sent: (i) by first class mail, postage prepaid, registered or certified, return receipt requested; (ii) by hand delivery; or (iii) by FedEx, or similar overnight express mail service, prepaid, to the following (**with a copy of all notices required or permitted to be given to the Settlor and/or the USA hereunder to be sent to the Trustee**):

| | |
|---|---|
| IF TO THE SETTLOR: | Maietta Enterprises, Inc.<br>Maietta Construction, Inc.<br>M7 Land Co., LLC<br>154 Pleasant Hill Road<br>Scarborough, ME 04074 |
| WITH A COPY TO: | Katherine Joyce, Esq.<br>Bernstein, Shur, Sawyer & Nelson, P.A.<br>100 Middle Street<br>P.O. Box 9729<br>Portland, ME 04104-5029 |
| IF TO THE TRUSTEE: | Timothy Norton, Esq.<br>Kelly, Remmel & Zimmerman<br>53 Exchange St., Suite 300<br>Portland, ME 04112 |
| IF TO THE UNITED STATES: | Perry Rosen, Esq.<br>United States Department of Justice<br>Environment & Natural Resources Div.<br>Environmental Defense Section<br>P.O. Box 7611 |

Washington, D.C. 20044

WITH COPIES TO:  Andrea Simpson
Senior Enforcement Counsel
United States Environmental Protection Agency
Region 1
Mail Code: ORC 4-2
5 Post Office Square
Boston, MA 02109-3912

Raymond Putman
Wetlands Enforcement Section
United States Environmental Protection Agency
Region 1
Mail Code: ECAD 4-1
5 Post Office Square
Boston, MA 02109-3912

All such communication shall be deemed made upon the earlier of (3) business days following deposit with the U.S. Mail or the date of receipt as disclosed on the return receipt (if sent by registered or certified mail), or upon delivery (if hand delivered), or upon delivery as indicated on the proof of delivery (if sent via FedEx or similar overnight express mail service). With respect to any of the above-referenced methods of delivery, rejection or other refusal to accept or the inability to deliver because of a change of address of which no notice was given shall be deemed to be receipt of the notice sent. Any party may change its address for purposes of this Section by giving the others notice of the new address in the manner prescribed above.

SECTION 10. ADVICE OF COUNSEL. The Trustee may from time to time consult with counsel, who shall not be counsel to the Settlor or the United States, with respect to any question arising as to the construction of the Consent Decree, this Agreement, or any action to be taken thereunder. The Trustee shall be fully protected, to the extent permitted by law, in acting upon the advice of counsel. The reasonable fees for such legal services shall be paid from the Fund.

SECTION 11. TRUSTEE COMPENSATION. The Trustee, including any successor, shall be entitled to reasonable compensation within the meaning of Section 708 of said Maine Uniform Trust Code. The Settlor shall pay the Trustee all compensation due hereunder and any unpaid compensation shall be deemed an unreimbursed advance within the meaning of Section 709 of said Maine Uniform Trust Code.

SECTION 12. SUCCESSOR TRUSTEE. No Trustee may be affiliated with the Settlor; provided, however, that no person acting as legal counsel to the Settlor in any capacity or at any time shall be deemed to be affiliated with the Settlor for the purposes of this Agreement. Any Trustee serving hereunder may resign at any time by written notice delivered to the United States. Any resignation tendered in accordance with this paragraph shall be effective immediately unless its terms otherwise provide. In the event that any vacancy arises in the office of Trustee hereunder, the

person appointed in a written instrument executed by the Board of Directors (or its successor Board or Committee) of Bernstein, Shur, Sawyer and Nelson, P.A., a Maine business corporation, or its successor, shall, subject to the approval of the United States, such approval not to be unreasonably withheld, become a Trustee hereunder. Resignations and appointments of Trustees may be made without the intervention or approval of any court.

SECTION 13.   INSTRUCTIONS BY THE TRUSTEE.  All notices, orders, requests, and instructions required or permitted to be made or given to the Trustee by the Settlor and/or the United States hereunder shall be in writing and otherwise in accordance with the notice procedures set forth in Section 9, signed by such persons as are designated in the attached Exhibit B or such other designees as the Settlor and/or the United States may designate by amendment to Exhibit B. The Trustee shall be fully protected in acting without inquiry on all notices, orders, requests, and instructions made or given in accordance with the terms hereof. The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change or a termination of the authority of any person to act on behalf of the Settlor or the United States hereunder has occurred. The Trustee shall have no duty to act in the absence of such orders, requests, and instructions from the Settlor and/or the United States except as provided for herein.

SECTION 14. AMENDMENTS. This Agreement may be amended by an instrument in writing executed by the Settlor, the Trustee, with the written approval of the United States or by the Trustee with the written approval of the United States if the Settlor is deceased, incapacitated or ceases to exist.

SECTION 15. IRREVOCABILITY. Subject to the rights of the Parties to amend this Agreement as provided in Section 14, the Fund established hereby shall be irrevocable and shall continue until terminated in accordance with the terms and conditions of Section 16 hereof or by the written agreement of the Settlor, the Trustee, and the United States.

SECTION 16. TERMINATION OF THE FUND. If the Settlor and the Trustee receive notice from the United States of the Settlor's completion of the Work (the "Notice of Completion") and payment of all amounts due and owing under paragraphs 16 and 17 of the Consent Decree, the Trustee shall thereafter take such action(s) as the Trustee shall deem reasonable and necessary to release the Collateral from the Fund; and upon the release of all Collateral from the Fund, the Fund shall terminate and this Agreement shall be null and void and of no further force or effect. Upon termination of the Fund, all remaining Collateral, if any, less any final Fund administration expenses, shall be delivered to the Settlor. In the event of a dispute, the Settlor may direct the Trustee to release the Collateral from the Fund only pursuant to a final decision rendered under Section IX (Dispute Resolution) of the Consent Decree. The Trustee shall provide notification of the release of the Collateral to the United States within 10 days of taking such action. This Agreement shall be terminated if the court issues an order denying entry of the Consent Decree. This Agreement may be terminated for any other reason only with the consent of all of the Parties, including but not limited to unreasonable delay by the Court in entering the Consent Decree, such consent not to be unreasonably withheld by the Parties.

SECTION 17. IMMUNITY AND INDEMNIFICATION. The Trustee shall not incur personal liability of any nature in connection with any act or omission, made in good faith, in the

administration of the Fund, or in the carrying out of any directions by the Settlor or the United States issued in accordance with this Agreement. The Trustee shall be indemnified and saved harmless by the Settlor from and against any personal liability to which the Trustee may be subjected by reason of any act or conduct in its fiduciary capacity, including all expenses reasonably incurred in its defense in the event the Settlor fails to provide such defense.

SECTION 18. <u>CHOICE OF LAW</u>. This Agreement shall be administered, construed, and enforced according to the laws of the State of Maine with regard to claims by the Settlor, Trustee, or any party other than the United States. Claims involving the United States are subject to federal law.

SECTION 19. <u>INTERPRETATION</u>. As used in this Agreement, words in the singular include the plural and words in the plural include the singular. The descriptive headings for each section of this Agreement shall not affect the interpretation or the legal efficacy of this Agreement. Each party has cooperated in the drafting and preparation of this Agreement and therefore, in any construction hereof, this Agreement shall not be construed against any party as the draftsman thereof.

SECTION 20. <u>MISCELLANEOUS</u>. Unless otherwise expressly stated herein, all defined terms contained in this Agreement shall have the meaning ascribed to them in the Consent Decree. In the event of a conflict between the terms of this Agreement and the terms of the Consent Decree, the terms of the Consent Decree shall control.

SECTION 21. <u>SPECIAL PROVISIONS RELATED TO MORTGAGE</u>. Reference is made to that certain a Mortgage Deed, Security Agreement & Financing Statement and Collateral Assignment of Leases and Rentals respecting the Premises and certain other real property owned by Vincent A. Maietta, Trustee of The Pleasant Hill Trust I a/k/a The Pleasant Hill Trust u/d/t dated November 7, 1994, as amended ("<u>Pleasant Hill Trust</u>") to Saco & Biddeford Savings Institution ("<u>SBSI</u>") dated May 3, 2019, and recorded in the Cumberland County Registry of Deeds in Book 35628, Page 188, and in Book 35628, Page 210 (the "<u>SBSI Mortgage and SBSI Collateral Assignment</u>"). Reference is further made to that certain Subordination Agreement by and between the Pleasant Hill Trust and SBSI and recorded on near or even date herewith pursuant to which SBSI subordinated all indebtedness now or hereafter secured by the SBSI Mortgage and SBSI Collateral Assignment to a certain Guaranty Mortgage Deed of near or even date herewith made and given by the Pleasant Hill Trust to the Trustee (the "<u>Guaranty Mortgage</u>") up to a maximum amount of $950,000.00, plus interest and costs, together with any advances required to protect the Premises. Upon the occurrence of any event of default under the SBSI Mortgage and SBSI Collateral Assignment, the United States shall have the right to do any of the following in its sole discretion: (i) declare an event of default under the Consent Decree, in which event the United States shall have all rights and remedies available to it for default of the Consent Decree, including, without limitation, the right to foreclose (or cause the Trustee to foreclose) the Guaranty Mortgage under any legal method of foreclosure in existence at the time or now existing, or under any other applicable law, including, without limitation, the STATUTORY POWER OF SALE pursuant to 33 M.R.S.A. §501-A; or (ii) take no action. Election by the United States not to declare a default under the Consent Decree, or the Guaranty Mortgage, as to any one event of default, shall not constitute a waiver of any rights of the United States as to any subsequent event of default.

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their respective officers duly authorized and their corporate seals to be hereunto affixed and attested as of the date first above written.

**SETTLOR:**

MAIETTA CONSTRUCTION, INC.

By: _/s/ Vincent A. Maietta, Pres._

Title: Former President
Print
Name: Vincent Maietta

MAIETTA ENTERPRISES, INC.

By: _/s/ Vincent A. Maietta, Pres._

Title: Former President
Print
Name: Vincent Maietta

M7 Land Co., LLC

By: _/s/ Vincent A. Maietta, Pres._

Title: President
Print
Name: Vincent Maietta

PLEASANT HILL TRUST

By: _/s/ Vincent A. Maietta, Trustee_

Title: Trustee
Print
Name: Vincent Maietta

8

**TRUSTEE:**

By: _____/s/ Timothy H. Norton_____

Print
Name: Timothy Norton

**UNITED STATES:**

UNITED STATES OF AMERICA, on behalf of the
U.S. Environmental Protection Agency

By: _____

Print
Name: _____

9

## EXHIBIT A

### COLLATERAL [AS OF April 28, 2021]

Beginning on the southerly sideline of Maietta Drive at a point seventy and ninety-one hundredths (70.91) feet easterly of an iron pipe at an angle therein; thence South 87° 54' 52" East by Maietta Drive four hundred two and fifty-nine hundredths (402.59) feet to the westerly sideline of land now or formerly of Roy H. Stewart; thence South 20° 59' 02" West by said Stewart land six hundred twenty-eight and three tenths (628.3) feet, more or less, to the northerly sideline of land formerly of A. Jasper Willey; thence South 86° 57' 51" West by said Willey land one thousand eighty-six and forty-one hundredths (1,086.41) feet to the easterly sideline of Pleasant Hill Road; thence northerly by Pleasant Hill Road by a curve to the right with a radius of seven hundred thirteen and ninety-four hundredths (713.94) feet a distance of ninety-one and twenty-two hundredths (91.22) feet to the southerly corner of land conveyed by Roy H. Stewart to J & M Towing, Ltd. by deed dated April 14, 1987 and recorded in said Registry of Deeds in Book 7715, Page 161; thence North 44° 30' 53" East by said land of J & M Towing, Ltd. four hundred and nine hundredths (400.09) feet to the corner of land conveyed by Louis B. Maietta, et al., to David W. Hill, et al., by deed dated November 17, 1986 and recorded in said Registry of Deeds in Book 7485, Page 73; thence South 59° 51' 12" East by said Hill land two hundred (200) feet to the southerly corner thereof; thence North 89° 46' 45" East by land of Louis B. Maietta, et al., one hundred fifty-six and ninety-three hundredths (156.93) feet to an angle; thence North 52° 49' 48" East by said Maietta land one hundred ninety-two and forty-nine hundredths (192.49) feet to an angle; thence North 30° 23' 01" East by said Maietta land three hundred nine and twenty-six hundredths (309.26) feet to the point of beginning.

The above-described courses are magnetic as of the year 1972.

Being a portion of the premises conveyed by Louis B. Maietta and Roberta L. Maietta to Louis B. Maietta and Robert L. Maietta by deed dated September 3, 1986 and recorded in said Registry of Deeds in Book 7356, Page 264, and a portion of the Premises conveyed by Roy H. Stewart to Louis B. Maietta and Roberta L. Maietta by deed dated November 17, 1986 and recorded in said Registry of Deeds in Book 7484, Page 110. Being the same as the land identified as "Parcel A" and "Parcel B" on plan entitled "Existing Conditions Survey of Northeast Technical Institute, Pleasant Hill Road, Scarborough, Maine" prepared by Sebago Technics and dated September 18, 2007 (the "Plan"), which is hereby incorporated and attached as Exhibit 1. Being the same as the land identified as "Parcel A" and "Parcel B" on plan entitled "Existing Conditions Survey of Northeast Technical Institute, Pleasant Hill Road, Scarborough, Maine" prepared by Sebago Technics and dated September 18, 2007 (the "Plan"), which is hereby incorporated and attached as Attachment 1.

Recognizing that inconsistencies may exist between legal descriptions record, the parties mean and intend to describe all of the land identified as "Parcel A" and "Parcel B" on the Plan, specifically including the "overlap area" identified in the Plan, note 11, between the western boundary of Parcel A and the eastern boundary of the abutting parcel as described in Deed Book 12859, Page 289.

## EXHIBIT B

## AUTHORIZED PERSONS

<u>SETTLOR</u>
Vincent Maietta
Katherine Joyce, Esq.

<u>TRUSTEE</u>
Timothy Norton

<u>UNITED STATES</u>
EPA Region 1 Regional Counsel
Perry Rosen, or the successor attorney assigned to the case